UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA,           *         CR. 21-40169
                                    *
                    Plaintiff,      *
                                    *    Sioux Falls, South Dakota
        -vs-                        *
                                    *
RUSTY JAMES DRISCOLL,               *         April 26, 2023
                                    *
                    Defendant.      *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

TRANSCRIPT OF
MOTION HEARING

BEFORE THE HONORABLE VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

APPEARANCES:

Counsel for Plaintiff:   MS. CONSTANCE K. LARSON
                         U.S. Attorney's Office
                         P.O. Box 2638
                         Sioux Falls, SD  57101

Counsel for Defendant:   MR. ANTHONY SUTTON
                         Reiter Law Firm Prof. LLC
                         5032 S. Bur Oak Pl., Ste. 205
                         Sioux Falls, SD  57108

Also Present:            MR. RUSTY JAMES DRISCOLL - Defendant

Transcriber:             MS. CHERYL A. HOOK, RMR, CRR
                         U.S. District Court
                         225 S. Pierre St.
                         Pierre, SD  57501

## <u>GOVERNMENT'S EXHIBITS</u>

|  | <u>OFFD</u> | <u>RECD</u> |
|---|---|---|
| 1 - SEALED MINNEHAHA COUNTY DISCIPLINARY RECORDS ......11 | | 13 |
| 2 - SEALED YANKTON COUNTY DISCIPLINARY RECORDS ........11 | | 13 |
| 3 - SEALED SHERBURN DISCIPLINARY RECORDS ..............11 | | 13 |
| 4 - SEALED TRANSCRIPT ..................................11 | | 13 |
| 5 - SEALED BILLING ENTRY BY PRIOR COUNSEL .............11 | | 13 |

# # # #

(The following proceedings were transcribed to the best of my ability from the Court's FTR recording system:)

(In open court at 4:01 p.m.:)

**THE COURT:** Thank you. Please be seated.

We are here this afternoon in the matter of *United States of America versus Rusty James Driscoll*. This is Criminal No. case 21-40169.

Will counsel please note their appearance for the record?

**MS. LARSON:** Connie Larson appearing for Mark Hodges for the United States, Your Honor.

**MR. SUTTON:** Anthony Sutton, Your Honor, appearing with Rusty Driscoll, who is personally present.

**THE COURT:** And good afternoon to you, sir. You're Rusty Driscoll?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** Mr. Driscoll, the reason why we're in court is because your lawyer filed a motion, asking that you be allowed to personally possess some of the discovery in this matter. And so that's what we're going to talk about.

Anthony, I did receive and read your written motion, your declaration, and that of your client. What else would you like to place on the record?

**MR. SUTTON:** Just argument from me, Your Honor.

**THE COURT:** Yup, I'll hear from you.

**MR. SUTTON:** Would you prefer we be seated because it looks like we are FTR today or standing is okay?

**THE COURT:** However you like.

**MR. SUTTON:** Okay.

**THE COURT:** Whatever makes you comfortable.

**MR. SUTTON:** Then I'm going to stand. Thank you.

Your Honor, obviously at the forefront, I want to knowledge that we're in a slightly different posture today than we were two weeks ago, when I filed this motion. At that time, my client was in Sherburne County away -- Sherburne County Jail -- excuse me -- which is about 10 hours away round trip from my office here in Sioux Falls.

Now, at least as of today, he's currently at the Minnehaha County Jail. For how long, that remains to be the case. I don't know. The marshals are an Article I entity and can kind of move defendants as they see fit. And obviously, they follow the recommendations of an Article III court, but they have their duty and obligations too. But as we sit today, he is in Minnehaha County, which is a much -- much different posture than it was two weeks ago.

**THE COURT:** Right.

**MR. SUTTON:** Given that, I have to shift -- I'm still going to rely on the authorities in my brief. And I know you've read them, so I'm not going to recite all of them. But I do have to take a slightly different approach.

And really what this motion comes down to is that of balance. Balance between the right that a Sixth Amendment provides for a defendant to have assistance of counsel for his defense and the rights of the courts under Federal Rule of Criminal Procedure 16(d)(1) for -- or, basically, for good cause to deny, restrict, or defer discovery, or inspection, or grant all of the appropriate relief.

We believe that, despite the change in circumstance here, ultimately the weight of the Sixth Amendment should still prevail in weighing of favor of tipping the scale -- excuse me -- to provide good cause for reasonable discovery.

Now, at the forefront, I do need to acknowledge that it is my client's position that the Sixth Amendment, along with his Fifth Amendment due process right, should automatically give him the right to possess discovery.

We've discussed that, and I'm here to represent his position as an officer of the Court. I am not going to go that far here today, but I do want to note what my client's argument is because I think it's important for his argument to be heard by this Court and considered on the merits of that.

For me, I still believe, as I mentioned, that ultimately the balance can still tip in favor of good cause and that we don't have to -- or that this Court need not address the question of whether the Local Rule 16.1 and 57.10 are or are not unconstitutional under the Sixth Amendment.

6

So the argument that I'll present here today is that just that the scale still tips in favor of there being good cause, but it will be my client's position.

I also want to knowledge the allegation that's in the United States' response regarding the *Hoeft* trial. On that point, all I can say is that I was able to obtain a copy of -- a partial copy of the transcript from that case. And certainly the testimony says what Mr. Hodges represented to the Court that it says. And having not been at that trial, not having any additional context, I can't provide any more opinion on that; but I can verify that, as I expected what Mr. Hodges represented to the Court was, in fact, what the transcript provides.

I think the same can be said, Your Honor, for the various disciplinary records that were provided by the Court to counsel here. On these, what I would note is that the disciplinary records from Minnehaha County and the Yankton County Jail are all seemingly for minor infractions, although there are a number of them at Minnehaha County.

And to support that point, I would cite the specific disciplinary record from -- I believe it's December 22nd, 2022, from Officer -- I believe it's correctional Officer (Indecipherable) where he said, quote, he "found no major violations or verbal warnings," end quote, in Mr. Driscoll's criminal -- or Mr. Driscoll's -- excuse me -- disciplinary

record.

As to the substance of our motion, Your Honor, we still rely on the authority in our brief. Primarily, I do want to reiterate our core point that under *United States versus Ladeaux*, which is a 2023 opinion from the Eighth Circuit, under *Kansas versus Ventris*, which is cited in Footnote 4. The *Ladeaux* decision -- it's a 2009 decision from the United States Supreme Court. And also, *Faretta versus California,* which is a 1975 decision from the United States Supreme Court.

That all of those together stand for the proposition -- that it is the right of a defendant to meaningfully prepare his defense with his counsel, and that that right is actually at the core of his Sixth Amendment. And, again, that's what we believe tips the scale here in order for the Court to find good cause.

We would also just rely (Indecipherable) and reciting in detail the persuasive authority that we think exists from the Eastern District of New York in *United States versus Mosquera*, from the Middle District of Tennessee in *United States versus Darden*, from the District of Columbia District Court in *United States versus* -- in *United States versus O'Keefe* -- excuse me -- and all of those, again, Your Honor, are cited in our briefing.

Factually, I think it's also important to recognize the material provided by this Court with respect to

Mr. Driscoll's representation by his former counsel, Ms. Tamayo, and that she represented him for nine months, as shown in Docket 33.  Mr. Driscoll was indicted on or about February 3rd, 2022, I believe.  And then, you know, after that point, she got access to the discovery.

It was during that time that he was being shifted around from Minnehaha County, Yankton County, Sherburne County.  And I believe at a time she first came to represent him, he may have been in Sherburne County, and there was the COVID-19 difficulties, which I think precipitated part of the previous motion for access to discovery that was filed.

And, you know, as shown in kind of the time entries from Ms. Tamayo, she spent about 19 hours reviewing discovery and kind of discussing at least those portions of the case.  You know, I don't have the full record of her stuff.  So I don't know what else was discussed with Mr. Driscoll and how that weighs in favor of the 19 hours, not including travel, that was produced, but having myself met with Mr. Driscoll to review discovery and, quite honestly, the commendable efforts of my investigator, who spent four or five days sitting in the Minnehaha County Jail with him, to review written discovery, and about another five or six days sitting with him at the Sherburne County Jail to review written discovery before I was produce the most recent 75 pages or so of written discovery, which I did have the opportunity to review with my client on

Monday.

But I would note, from Mr. Driscoll's perspective, you know, a lot of that is just time to review and take some notes on the discovery. You know, you can have some discussion, but it may not be the discussion that he would like.

And I think, as his affidavit recognizes, he's a very reflective person and somebody who needs to take time to read something, review on it, reflect before he's prepared to have that opportunity to meaningfully assist his counsel.

You know, I would also like to note that, you know, of the now nearly 2500 pages of written discovery that have been produced and reviewed with Mr. Driscoll, what we have not had a chance to review yet is the voluminous PRTT data that I obtained access to here about two weeks ago. It was initially produced. But due to some technology issues that are slightly outside the realm of my technical understanding; but with the assistance of my defense team, I was able to convey to the government that I needed it provided to me in a different format.

So I'm now in the past couple of weeks have just had access to the -- basically all of the data and the four cell phones that were subject to the (Indecipherable) warrants that I believe this Court is familiar with. And there is a trove of data on those. I can't begin to quantify what that means in

pages because how it's electronically produced to me is not really, at least as I can tell, subject to printing. But I'm working with my defense team to process that data, understand it, so that I can have the ability to meaningfully discuss it with Mr. Driscoll.

**THE COURT:** Okay.

**MR. SUTTON:** The other thing I would just like to say is that this motion for discovery really was one of compromise between my client and I. He had been requesting shortly before I filed -- that I ask -- that I file a motion for continuance so he could have more time to review the discovery and prepare his defense. I had moved for a continuance before that in the hopes of getting some of the discovery, which I now have, except I requested a small bit of it as well that we had some technical issues with.

But recognizing the interests of a public's right and a speedy trial and concerns that Judge Schreier had expressed during our conference, I found this to be the appropriate middle ground.

Depending on the ruling here today, I may have to reevaluate with my client what our options are, but that's part of the background that's not in the motion that I think is important for the Court to understand.

While the United States raises several points in its response, we do continue to believe that, even though this is a

conspiracy case, again, we believe that the Court can fashion some restrictions. And, you know, I'm not here to necessarily tell the Court exactly what those conditions should be, given my client's position that he should have access to everything. But we do believe that the weight of the Sixth Amendment does weigh in favor of finding good cause and granting relief from not only the discovery order but also then thereto from the Local Rule 16.1 and 57.10.

So unless the Court has any questions, I'll rely on my brief. But thank you, Your Honor, for the opportunity.

**THE COURT:** Thank you, Anthony.

Connie, I realize this isn't your case, but what would you like to respond?

**MS. LARSON:** Your Honor, I printed the disciplinary reports, which I understand were shared with the Court and counsel, and marked the Minnehaha County ones all together as Exhibit 1, the Yankton County ones as Exhibit 2, and the Sherburne County as Exhibit 3.

I would also note that the *Hoeft* transcript should also be considered by the Court, which I know it has been, and also the billing records. So I would, to extent that those are not included, I would offer those as Exhibits 4 and 5, too. So I would offer Exhibits 1 through 3 of the jail records and 4 and 5 for the Court's consideration so they're for sure part of the Court's record.

**THE COURT:** Tell me again what 4 and 5 are.

**MS. LARSON:** 4 -- I would -- I would say I did not print -- are the *Hoeft* transcripts, which I think were attached to Mr. Hodge's response.

**THE COURT:** Okay.

**MS. LARSON:** And Exhibit 5 is a billing entry from prior counsel.

**THE COURT:** Okay.

**MS. LARSON:** Which I understand was also shared with Court and counsel.

**THE COURT:** And I would propose, if those are received --

First of all, I ask you, Anthony, do you have any objection to those being received?

**MR. SUTTON:** I suppose as long as they are under seal.

**THE COURT:** That is what I was going to say is that -- that I think all five should be placed under seal.

**MR. SUTTON:** The only thing I would note is I don't believe that *Hoeft* -- is that how you say it? I always said *Hoeft*. -- transcript was attached to the response. I had to go get that transcript, but it is available. And I -- I have no objection to the substance of those so long as they are under seal because there is (Indecipherable) confidential information in all five of those exhibits.

**THE COURT:** Right. Yeah, I would ask -- I would -- first of all, I will receive Exhibits 1 through 5. I'll also order that those be placed under seal.

**MS. LARSON:** Thank you, Your Honor. In addition, as the Court is aware, this is an argument that was made previously and appealed previously. I believe it's the law of the case. I don't think I -- honestly, Your Honor, I don't know why we're back here on this exact same issue. So --

**THE COURT:** Because the *Ladeaux* decision came down in the interim.

**MS. LARSON:** Your Honor, I understand that, and I understand -- I understand that there's a footnote in there --

**THE COURT:** Right.

**MS. LARSON:** -- that seems to indicate that there could be an argument, which I understand all of those things. However, balancing the factors, given the exhibits, given the way this case has come in, Your Honor, I would say this is exactly the type of case in which the Court's restrictive orders should be applied, are properly in place, and this is exactly the situation that the Court, I'm sure, is hoping to avoid.

In response to the information about the defendant being moved, at least some of that was due in part to the defendant's own behavior. There are jails that don't want him back. So the marshals have done their best. He's been

available, maybe not as conveniently available.  But it certainly sounds like the investigator, at least, has been able to meet with the defendant.

So given all of those things, Your Honor, we believe that the Court's existing order should remain in place, and the restrictions on discovery exist.

**THE COURT:**  Thank you.

Mr. Driscoll, I'm not unsympathetic to your position.  You know, I've been on the bench for 16 years.  And before I went on the bench, this stipulation was not mandatory.  The government would send it over, but I would frequently refuse to sign it, and I still got discovery anyway.

It's now -- I don't -- the type of crimes that we see in federal court and the violence that we're seeing in federal court is on the increase.  We've had several incidents where witnesses and co-defendants, who are cooperating, have been threatened, have been harmed.  And so there was a good reason for the institution of the rule and formalizing it.

Nevertheless, the rule is not absolute.  There are situations where, for good cause, we can find reasons to act outside of the rule.  I just don't think in your case that good cause has been shown.

Your previous counsel, Ms. Tamayo, went over discovery with you for approximately 19 and a half hours.  And most of that was in person.  There was one segment, I think,

four or five hours, that was by Zoom. The rest of it was all in person. And she's got entries where she said, "I went over 400 pages of this day. I went over 200 pages of discovery with Rusty this day."

In addition, both you and your lawyer have filed declarations and affidavits with the Court, indicating that you've been able to see all of the discovery a second time with your new counsel. I understand you're a person who says you need to see it more often than just once, but you have gotten to see it twice.

In addition, despite the fact that the Minnehaha County Jail and the Yankton County Jail don't really want to have you back in their population, I have asked the marshals to keep you here locally until your trial date on May 30th, to facilitate further review of discovery, if you need it or want it, with your counsel. Your lawyer has his offices right here in Sioux Falls. You're going to be here in Sioux Falls or close by. And so you'll have additional opportunity to review discovery.

The Sixth Amendment right to participate in your defense is not absolute. It's something that I have to do a balancing test. Not only is the specter of retribution or witness intimidation out there, there's some suggestion that -- that you may have engaged in that, by sharing information about a co-defendant who cooperated with Mr. Hoeft. At least that's

what Mr. Hoeft testified to at his trial.

I'll tell you, we had a defendant at Sherburne County Jail last year, who was representing himself. And so we had to give him the discovery. We gave it to the jail. There were supposed to be safeguards to ensure that that inmate could not copy the materials and send them outside of the jail. But jailers are not about the business of protecting documents. They're not discovery custodians.

And despite their best efforts, this defendant was able to copy quite a few provisions of his discovery, and mail that was intercepted was being sent to third parties outside saying, "This person cooperated. Go look up him up."

So it's a very real threat. And I have to be balance that against your desire to participate in your own defense and to assist in your own defense. I find that up until now you have had adequate attempts and opportunities to review your discovery and go over it. You'll have still more in this month between now and your trial.

So I am going to deny the motion for those reasons. I know that's not the result you were hoping to receive. But if you have any questions for me, I'm happy to try to answer them. Do you have any questions?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** Okay.

**THE DEFENDANT:** When the Court considered the time

frame by which I've had to read these discoveries, as in the motion, I've literally only read over it one time. That's the written discovery, Your Honor. That doesn't mean anything additional, such as phone calls, the PRTT data, any of the stuff computerized that is not translated into paper form I haven't had a chance to read, and we have one month left until trial.

**THE COURT:** So those --

**THE DEFENDANT:** Yes.

**THE COURT:** -- now that you're local, your lawyer will be able to show you those.

**THE DEFENDANT:** Well, Your Honor, with all due respect --

**THE COURT:** But the one month -- I just want to make one comment about that. I'm not in charge of when your trial date is. That's Judge Schreier. I don't get to control her docket. She gets to control when a case goes to trial.

So I know, Anthony, you have a suggestion at one point in your brief that it was maybe also a Sixth Amendment denial of your client's rights to -- to force the trial to take place on May 30th. That's way outside my bailiwick. I can't address that. That will be for Judge Schreier to address.

**THE DEFENDANT:** One more thing, Your Honor. I don't know if the Court has considered the fact that it has no control over when and where the marshals send me. So if they

decide to send me to Sherburne again during this month, the Court cannot control that. Thus, to prepare for a trial, it makes it very difficult for my -- my lawyer or his investigator to meaningfully go over this discovery. It's --

**THE COURT:** Well, in a very real sense, you're in control of that. If you don't get yourself kicked out of the -- whatever jail you're in right now, you're in control of that. The marshals have told me they're going to use their best efforts to keep you here. You can choose to act up and get yourself kicked out of the jail again, and then you're going to be back in Sherburne. But that's on you. That's not on the marshals.

They're not going to transfer you back to Sherburne with less than 30 days -- or with 30 days between now and your trial date. They have assured me that they're going to use their best efforts to keep you here. They understand the importance of you being able to meet with your client in the run up to trial.

**THE DEFENDANT:** Well, I hope the Court would understand as well, it wasn't acting-out behavior that got me moved. It was grievances. From doing grievances, situations that are -- you know, an inmate deals with being inside a jail, the only way that we meaningfully have to fix these situations is by doing grievances. And that is why they moved me.

**THE COURT:** Okay.

**THE DEFENDANT:** It's been made clear that's why I was moved, not from acting out or -- and -- jails should have places to put people if they are acting out. That seems to make sense. But thank you, Your Honor, I guess.

**THE COURT:** You bet.

Anthony, is there anything else that you'd like to add to the record?

**MR. SUTTON:** No, Your Honor.

**THE COURT:** I want to thank you for a very well presented motion. I was somewhat flippant when I said the reason why we're back is because of the *Ladeaux* decision. What I really want to say, in a more serious vein, is the previous motion that was made, was made based on COVID, and that's not the basis for the current motion. So I didn't see it as law of the case. And I did read the *Ladeaux* footnote with a great deal of seriousness.

The bottom line is, though, it is dicta. It was not part of the decision of the case. And it doesn't tie the Court's hands in terms of making that good faith balancing test, which is what I've tried to do here.

So I appreciate you bringing it before the Court. I'm sure this is not the last we'll hear of the *Ladeaux* footnote. But that's my decision for what it's worth.

Connie, is there anything else that you'd like to place on the record?

**MS. LARSON:**  No, Your Honor.

**THE COURT:**  Thank you, then.  We'll be adjourned.

(End of proceedings at 4:24 p.m.)

# # # #

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA          SS          CERTIFICATE OF REPORTER
CENTRAL DIVISION
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
          I, Cheryl A. Hook, official United States District
Court Reporter, Registered Merit Reporter, Certified Realtime
Reporter and Notary Public, hereby certify that the above and
foregoing transcript has been transcribed to the best of my
ability from the District Court's FTR recording system
consisting of pages 1 through 20.
          I further certify that I am not a relative or
employee or attorney or counsel of any of the parties hereto,
nor a relative or employee of such attorney or counsel; nor
do I have any interest in the outcome or events of the action.
          IN TESTIMONY WHEREOF, I have hereto set my hand
and official seal this 30th day of July, 2023, at Pierre,
South Dakota.

*/s/ Cheryl A. Hook*

_____
          CHERYL A. HOOK, RMR, CRR
          Court Reporter and Notary Public
          225 S. Pierre St. #420
          Pierre, SD  57501
          Phone: (605) 945-4626
          Email: cheryl_hook@sdd.uscourts.gov
          My Commission Expires: 04-01-2026

**0**

**04-01-2026 [1]** 21/13

**1**

**10 [1]** 4/11
**16 [2]** 5/5 14/9
**16.1 [2]** 5/24 11/8
**19 [4]** 8/9 8/13 8/17 14/24
**1975 [1]** 7/9

**2**

**20 [1]** 21/5
**200 [1]** 15/3
**2009 [1]** 7/7
**2022 [2]** 6/21 8/4
**2023 [3]** 1/8 7/5 21/8
**2026 [1]** 21/13
**205 [1]** 1/19
**21-40169 [2]** 1/5 3/7
**225 [2]** 1/23 21/11
**22nd [1]** 6/21
**2500 [1]** 9/12
**26 [1]** 1/8
**2638 [1]** 1/17

**3**

**30 [2]** 18/14 18/14
**30th [3]** 15/14 17/21 21/8
**33 [1]** 8/3
**3rd [1]** 8/4

**4**

**400 [1]** 15/3
**40169 [2]** 1/5 3/7
**420 [1]** 21/11
**4626 [1]** 21/12
**4:01 [1]** 3/3
**4:24 p.m [1]** 20/3

**5**

**5032 [1]** 1/19
**57.10 [2]** 5/24 11/8
**57101 [1]** 1/17
**57108 [1]** 1/20
**57501 [2]** 1/23 21/12

**6**

**605 [1]** 21/12

**7**

**75 [1]** 8/24

**A**

**ability [3]** 3/2 10/4 21/5
**able [6]** 6/6 9/18 14/2 15/7 16/10 18/17
**absolute [2]** 14/19 15/21
**access [5]** 8/5 8/11 9/15 9/22 11/4
**acknowledge [1]** 5/12
**act [1]** 14/20
**action [1]** 21/7
**add [1]** 19/7
**addition [2]** 15/5 15/11
**additional [2]** 6/10 15/18
**address [3]** 5/23 17/22 17/22
**adequate [1]** 16/16
**affidavit [1]** 9/7
**affidavits [1]** 15/6
**after [1]** 8/4
**afternoon [1]** 3/5

**again [3]** 7/14 7/22 11/1
**against [1]** 16/14
**ago [3]** 4/9 4/20 9/15
**allegation [1]** 6/4
**along [1]** 5/13
**although [1]** 6/18
**Amendment [9]** 5/2 5/9 5/13 5/14 5/25 7/13 11/5 15/20 17/19
**AMERICA [2]** 1/5 3/6
**another [1]** 8/22
**answer [1]** 16/21
**ANTHONY [5]** 1/18 3/21 12/13 17/18 19/6
**anyway [1]** 14/12
**appearance [1]** 3/8
**APPEARANCES [1]** 1/15
**appreciate [1]** 19/21
**appropriate [2]** 5/7 10/18
**approximately [1]** 14/24
**April [1]** 1/8
**argument [3]** 5/18 5/19 6/1
**around [1]** 8/7
**Article [2]** 4/15 4/17
**asked [1]** 15/13
**assist [2]** 9/10 16/15
**assistance [2]** 5/3 9/18
**assured [1]** 18/15
**attempts [1]** 16/16
**authority [2]** 7/3 7/17
**automatically [1]** 5/14
**available [2]** 14/1 14/1
**away [2]** 4/10 4/11

**B**

**back [3]** 13/25 15/13 18/13
**background [1]** 10/22
**bailiwick [1]** 17/21
**balance [4]** 5/2 5/2 5/22 16/13
**balancing [2]** 15/22 19/19
**basically [2]** 5/5 9/22
**before [5]** 1/12 8/23 9/9 14/9 19/21
**begin [1]** 9/25
**behavior [1]** 13/24
**believe [12]** 5/8 5/21 6/21 6/22 7/14 8/4 8/8 9/24 10/25 11/1 11/5 14/4
**bench [2]** 14/9 14/10
**best [5]** 3/1 13/25 16/9 18/16 21/4
**between [3]** 5/2 16/18 18/14
**billing [2]** 2/7 11/21
**both [1]** 15/5
**bottom [1]** 19/17
**Box [1]** 1/17
**brief [3]** 7/3 11/10 17/19
**briefing [1]** 7/23
**bringing [1]** 19/21
**Bur [1]** 1/19
**business [1]** 16/7

**C**

**California [1]** 7/8
**came [1]** 8/8
**cause [8]** 5/6 5/11 5/22 6/3 7/15 11/6 14/20 14/22
**cell [1]** 9/22

**CENTRAL [1]** 21/2
**certainly [2]** 6/7 14/2
**CERTIFICATE [1]** 21/1
**Certified [1]** 21/3
**certify [2]** 21/4 21/6
**chance [1]** 9/14
**change [1]** 5/8
**cheryl [5]** 1/22 21/3 21/9 21/10 21/13
**Circuit [1]** 7/5
**circumstance [1]** 5/8
**cite [1]** 6/20
**cited [2]** 7/6 7/23
**client [5]** 3/22 4/10 8/25 10/21 18/17
**client's [5]** 5/13 5/18 6/3 11/4 17/20
**close [1]** 15/18
**co [2]** 14/16 15/25
**co-defendant [1]** 15/25
**co-defendants [1]** 14/16
**Columbia [1]** 7/20
**comes [1]** 5/1
**commendable [1]** 8/19
**Commission [1]** 21/13
**concerns [1]** 10/17
**conditions [1]** 11/3
**conference [1]** 10/18
**Connie [2]** 11/12 19/24
**consideration [1]** 11/24
**considered [2]** 5/20 11/20
**consisting [1]** 21/5
**conspiracy [1]** 11/1
**CONSTANCE [1]** 1/16
**context [1]** 6/10
**continue [1]** 10/25
**conveniently [1]** 14/1
**convey [1]** 9/18
**cooperated [2]** 15/25 16/12
**cooperating [1]** 14/16
**copy [4]** 6/6 6/7 16/6 16/10
**core [2]** 7/4 7/13
**correctional [1]** 6/22
**counsel [14]** 1/16 1/18 2/7 3/8 5/3 6/16 7/12 8/1 9/10 14/23 15/8 15/16 21/6 21/7
**COUNTY [18]** 2/3 2/4 4/10 4/10 4/14 4/19 6/17 6/18 6/19 8/7 8/7 8/7 8/9 8/21 8/23 15/12 15/12 16/2
**couple [1]** 9/21
**Court's [6]** 3/2 11/24 11/25 14/5 19/19 21/5
**courts [1]** 5/4
**COVID [1]** 8/9
**COVID-19 [1]** 8/9
**crimes [1]** 14/13
**criminal [3]** 3/7 5/5 6/25
**Criminal No [1]** 3/7
**currently [1]** 4/13
**custodians [1]** 16/8

**D**

**DAKOTA [4]** 1/2 1/6 21/1 21/9
**Darden [1]** 7/20
**data [4]** 9/14 9/22 9/25

**10/3**
**date [2]** 15/14 18/15
**day [3]** 15/3 15/4 21/8
**days [4]** 8/20 8/22 18/14 18/14
**December [1]** 6/21
**December 22nd [1]** 6/21
**decision [5]** 7/7 7/7 7/9 19/18 19/23
**declaration [1]** 3/22
**declarations [1]** 15/6
**defendant [10]** 1/9 1/18 1/21 5/3 7/11 13/22 14/3 15/25 16/2 16/9
**defendant's [1]** 13/24
**defendants [2]** 4/16 14/16
**defense [7]** 5/4 7/12 9/18 10/3 15/21 16/14 16/15
**defer [1]** 5/6
**denial [1]** 17/20
**deny [2]** 5/6 16/19
**Depending [1]** 10/20
**desire [1]** 16/14
**despite [3]** 5/8 15/11 16/9
**detail [1]** 7/17
**dicta [1]** 19/17
**different [3]** 4/8 4/19 9/19
**difficulties [1]** 8/10
**disciplinary [7]** 2/3 2/4 2/5 6/15 6/17 6/21 6/25
**discovery [24]**
**discuss [1]** 10/4
**discussed [2]** 5/16 8/16
**discussing [1]** 8/14
**discussion [2]** 9/5 9/5
**DISTRICT [11]** 1/1 1/2 1/22 7/18 7/19 7/20 7/20 21/1 21/1 21/3 21/5
**DIVISION [2]** 1/3 21/2
**Docket [1]** 8/3
**documents [1]** 16/7
**down [1]** 5/1
**DRISCOLL [9]** 1/8 1/21 3/6 8/3 8/16 8/18 9/13 10/5 14/8
**Driscoll's [4]** 6/24 6/25 8/1 9/2
**due [3]** 5/14 9/16 13/23
**DUFFY [1]** 1/12
**during [2]** 8/6 10/18
**duty [1]** 4/18

**E**

**Eastern [1]** 7/18
**efforts [3]** 8/19 16/9 18/16
**Eighth [1]** 7/5
**electronically [1]** 10/1
**Email [1]** 21/13
**employee [2]** 21/6 21/7
**end [2]** 6/24 20/3
**engaged [1]** 15/24
**ensure [1]** 16/5
**entity [1]** 4/15
**entries [2]** 8/12 15/2
**ENTRY [1]** 2/7
**even [1]** 10/25
**events [1]** 21/7
**exactly [1]** 11/3

**excuse [4]** 4/11 5/10 6/25 7/22
**EXHIBITS [3]** 2/1 11/22 11/23
**exist [1]** 14/6
**existing [1]** 14/5
**exists [1]** 7/17
**expected [1]** 6/11
**Expires [1]** 21/13
**expressed [1]** 10/17
**extent [1]** 11/21

**F**

**facilitate [1]** 15/15
**fact [2]** 6/12 15/11
**Factually [1]** 7/24
**faith [1]** 19/19
**Falls [6]** 1/6 1/17 1/20 4/12 15/17 15/17
**familiar [1]** 9/24
**far [1]** 5/18
**Faretta [1]** 7/8
**fashion [1]** 11/1
**favor [5]** 5/10 5/22 6/2 8/17 11/6
**February [1]** 8/4
**February 3rd [1]** 8/4
**federal [3]** 5/4 14/14 14/14
**few [1]** 16/10
**Fifth [1]** 5/14
**filed [3]** 4/9 8/11 15/5
**find [3]** 7/15 14/20 16/15
**finding [1]** 11/6
**Firm [1]** 1/19
**first [2]** 8/8 12/13
**fit [1]** 4/16
**five [3]** 8/20 8/22 15/1
**follow [1]** 4/17
**following [1]** 3/1
**footnote [2]** 7/6 19/23
**force [1]** 17/20
**forefront [2]** 4/7 5/12
**foregoing [1]** 21/4
**formalizing [1]** 14/18
**format [1]** 9/20
**former [1]** 8/1
**found [2]** 6/23 10/18
**four [3]** 8/20 9/22 15/1
**frequently [1]** 14/11
**FTR [2]** 3/2 21/5
**full [1]** 8/15
**further [2]** 15/15 21/6

**G**

**gave [1]** 16/4
**give [2]** 5/15 16/4
**given [2]** 11/3 14/4
**good [10]** 5/5 5/11 5/22 6/2 7/15 11/6 14/17 14/20 14/21 19/19
**gotten [1]** 15/9
**government [2]** 9/19 14/11
**GOVERNMENT'S [1]** 2/1
**grant [1]** 5/7
**granting [1]** 11/6
**ground [1]** 10/19

**H**

**half [1]** 14/24
**hand [1]** 21/8
**hands [1]** 19/19

**H**

**happy [1]** 16/21
**harmed [1]** 14/17
**having [3]** 6/9 6/9 8/18
**hear [1]** 19/22
**heard [1]** 5/19
**HEARING [1]** 1/11
**hereby [1]** 21/4
**hereto [2]** 21/6 21/8
**himself [1]** 16/3
**Hodges [2]** 6/8 6/11
**Hoeft [4]** 6/5 11/19 15/25
16/1
**honestly [1]** 8/19
**HONORABLE [1]** 1/12
**hook [5]** 1/22 21/3 21/9
21/10 21/13
**hoping [1]** 16/20
**hours [5]** 4/11 8/13 8/17
14/24 15/1

**I**

**III [1]** 4/17
**importance [1]** 18/17
**important [3]** 5/19 7/24
10/23
**incidents [1]** 14/15
**included [1]** 11/22
**including [1]** 8/17
**increase [1]** 14/15
**Indecipherable [3]** 6/23
7/16 9/23
**indicating [1]** 15/6
**indicted [1]** 8/3
**information [2]** 13/22
15/24
**infractions [1]** 6/18
**initially [1]** 9/15
**inmate [1]** 16/5
**inspection [1]** 5/6
**institution [1]** 14/18
**intercepted [1]** 16/11
**interest [1]** 21/7
**interests [1]** 10/16
**intimidation [1]** 15/23
**investigator [2]** 8/20
14/2
**issues [1]** 9/16

**J**

**jail [11]** 4/11 4/14 6/18
8/21 8/23 11/23 15/12
15/12 16/3 16/4 16/6
**jailers [1]** 16/7
**jails [1]** 13/24
**JAMES [3]** 1/8 1/21 3/6
**JUDGE [3]** 1/13 10/17
17/22
**Judge Schreier [2]** 10/17
17/22
**July [1]** 21/8

**K**

**Kansas [1]** 7/6
**keep [2]** 15/14 18/16
**kind [3]** 4/16 8/12 8/14
**knowledge [2]** 4/8 6/4

**L**

**Ladeaux [3]** 7/5 7/7
19/22
**LARSON [1]** 1/16

**last [2]** 16/3 19/22
**Law [1]** 1/19
**least [6]** 4/13 8/14 10/2
13/23 14/2 15/25
**less [1]** 18/14
**line [1]** 19/17
**LLC [1]** 1/19
**Local [2]** 5/24 11/8
**locally [1]** 15/14
**long [1]** 4/14
**look [1]** 16/12
**lot [1]** 9/3

**M**

**MAGISTRATE [1]** 1/13
**mail [1]** 16/10
**major [1]** 6/23
**making [1]** 19/19
**mandatory [1]** 14/10
**marshals [3]** 4/15 13/25
15/13
**material [1]** 7/25
**materials [1]** 16/6
**matter [1]** 3/5
**May 30th [2]** 15/14 17/21
**maybe [2]** 14/1 17/19
**meaningfully [3]** 7/12
9/10 10/4
**means [1]** 9/25
**meet [2]** 14/3 18/17
**mentioned [1]** 5/21
**Merit [1]** 21/3
**merits [1]** 5/20
**met [1]** 8/18
**middle [2]** 7/19 10/19
**MINNEHAHA [8]** 2/3 4/14
4/19 6/17 6/19 8/7 8/21
15/11
**minor [1]** 6/18
**Monday [1]** 9/1
**month [1]** 16/17
**months [1]** 8/2
**more [3]** 6/10 15/9 16/17
**Mosquera [1]** 7/19
**most [2]** 8/24 14/25
**motion [8]** 1/11 3/21 4/9
5/1 7/2 8/11 10/22 16/19
**move [1]** 4/16
**moved [1]** 13/23
**Mr. Driscoll [6]** 8/3 8/16
8/18 9/13 10/5 14/8
**Mr. Driscoll's [4]** 6/24
6/25 8/1 9/2
**Mr. Hodges [2]** 6/8 6/11
**Mr. Hoeft [2]** 15/25 16/1
**much [2]** 4/19 4/19
**myself [1]** 8/18

**N**

**nearly [1]** 9/12
**necessarily [1]** 11/2
**need [4]** 5/12 5/23 15/9
15/15
**needed [1]** 9/19
**needs [1]** 9/8
**Nevertheless [1]** 14/19
**new [2]** 7/18 15/8
**New York [1]** 7/18
**nine [1]** 8/2
**Notary [2]** 21/4 21/11
**note [6]** 3/8 5/18 6/16 9/2
9/11 11/19
**notes [1]** 9/4

**number [1]** 6/19

**O**

**O'Keefe [1]** 7/22
**Oak [1]** 1/19
**objection [1]** 12/14
**obligations [1]** 4/18
**obtain [1]** 6/6
**obtained [1]** 9/15
**obviously [2]** 4/7 4/16
**offer [2]** 11/22 11/23
**office [2]** 1/16 4/12
**officer [3]** 5/17 6/22 6/22
**offices [1]** 15/16
**official [2]** 21/3 21/8
**often [1]** 15/9
**once [1]** 15/9
**one [2]** 14/25 17/18
**only [2]** 11/7 15/22
**open [1]** 3/3
**opinion [2]** 6/10 7/5
**opportunities [1]** 16/16
**opportunity [4]** 8/25 9/10
11/10 15/18
**options [1]** 10/21
**order [3]** 7/14 11/7 14/5
**outcome [1]** 21/7
**outside [5]** 9/17 14/21
16/6 16/11 17/21
**over [5]** 14/11 14/23 15/2
15/3 16/17
**own [3]** 13/24 16/14
16/15

**P**

**P.O [1]** 1/17
**pages [6]** 8/24 9/12 10/1
15/3 15/3 21/5
**part [5]** 8/10 10/21 11/24
13/23 19/18
**partial [1]** 6/7
**participate [2]** 15/20
16/14
**parties [2]** 16/11 21/6
**past [1]** 9/21
**person [5]** 9/8 14/25 15/2
15/8 16/12
**perspective [1]** 9/2
**persuasive [1]** 7/17
**Phone [1]** 21/12
**phones [1]** 9/23
**Pierre [5]** 1/23 1/23 21/8
21/11 21/12
**PI [1]** 1/19
**place [4]** 3/23 14/5 17/21
19/25
**Plaintiff [2]** 1/6 1/16
**please [1]** 3/8
**point [5]** 6/6 6/20 7/4 8/5
17/19
**points [1]** 10/24
**population [1]** 15/13
**portions [1]** 8/14
**position [5]** 5/13 5/17 6/3
11/4 14/8
**possess [1]** 5/15
**posture [2]** 4/8 4/20
**precipitated [1]** 8/10
**prepare [1]** 7/12
**prepared [1]** 9/9
**present [2]** 1/21 6/1
**prevail [1]** 5/10
**previous [2]** 8/10 14/23

**Primarily [1]** 7/3
**printing [1]** 10/2
**PRIOR [1]** 2/7
**Procedure [1]** 5/5
**proceedings [2]** 3/1 20/3
**process [2]** 5/14 10/3
**produce [1]** 8/24
**produced [4]** 8/18 9/13
9/16 10/1
**Prof [1]** 1/19
**proposition [1]** 7/11
**protecting [1]** 16/7
**provide [2]** 5/11 6/10
**provided [3]** 6/15 7/25
9/19
**provides [2]** 5/3 6/13
**provisions [1]** 16/10
**PRTT [1]** 9/14
**Public [2]** 21/4 21/11
**public's [1]** 10/16

**Q**

**quantify [1]** 9/25
**question [1]** 5/24
**questions [3]** 11/9 16/21
16/22
**quite [2]** 8/19 16/10
**quote [2]** 6/23 6/24

**R**

**raises [1]** 10/24
**read [2]** 3/21 9/8
**real [1]** 16/13
**realize [1]** 11/12
**really [3]** 5/1 10/2 15/12
**realm [1]** 9/17
**Realtime [1]** 21/3
**reason [1]** 14/17
**reasonable [1]** 5/11
**reasons [2]** 14/20 16/19
**receive [2]** 3/21 16/20
**received [1]** 12/14
**recent [1]** 8/24
**reciting [1]** 7/16
**recognize [1]** 7/24
**recognizes [1]** 9/7
**recognizing [1]** 10/16
**recommendations [1]**
4/17
**record [8]** 3/9 3/23 6/21
7/1 8/15 11/25 19/7 19/25
**recording [2]** 3/2 21/5
**records [7]** 2/3 2/4 2/5
6/15 6/17 11/21 11/23
**reevaluate [1]** 10/21
**reflect [1]** 9/9
**reflective [1]** 9/8
**refuse [1]** 14/11
**regarding [1]** 6/5
**Registered [1]** 21/3
**Reiter [1]** 1/19
**reiterate [1]** 7/4
**relative [2]** 21/6 21/7
**relief [2]** 5/7 11/6
**rely [3]** 7/3 7/16 11/9
**remain [1]** 14/5
**remains [1]** 4/14
**REPORTER [5]** 21/1 21/3
21/3 21/4 21/11
**represent [2]** 5/16 8/8
**representation [1]** 8/1
**represented [3]** 6/8 6/12
8/2

**representing [1]** 16/3
**respect [1]** 7/25
**respond [1]** 11/13
**response [3]** 6/5 10/25
13/22
**rest [1]** 15/1
**restrict [1]** 5/6
**restrictions [2]** 11/2 14/6
**result [1]** 16/20
**retribution [1]** 15/22
**review [10]** 8/19 8/21
8/23 8/25 9/3 9/9 9/14
15/15 15/18 16/16
**reviewed [1]** 9/13
**reviewing [1]** 8/13
**rights [2]** 5/4 17/20
**round [1]** 4/11
**rule [6]** 5/4 5/24 11/8
14/18 14/19 14/21
**ruling [1]** 10/20
**run [1]** 18/18
**RUSTY [4]** 1/8 1/21 3/6
15/4

**S**

**safeguards [1]** 16/5
**same [1]** 6/14
**saying [1]** 16/12
**scale [3]** 5/10 6/2 7/14
**Schreier [2]** 10/17 17/22
**sdd.uscourts.gov [1]**
21/13
**seal [1]** 21/8
**SEALED [5]** 2/3 2/4 2/5
2/6 2/7
**second [1]** 15/7
**seeing [1]** 14/14
**seemingly [1]** 6/18
**segment [1]** 14/25
**send [2]** 14/11 16/6
**sent [1]** 16/11
**set [1]** 21/8
**several [2]** 10/24 14/15
**sharing [1]** 15/24
**SHERBURN [1]** 2/5
**Sherburne [7]** 4/10 4/10
8/7 8/9 8/23 16/2 18/13
**shifted [1]** 8/6
**shown [3]** 8/3 8/12 14/22
**sign [1]** 14/12
**Sioux [6]** 1/6 1/17 1/20
4/12 15/17 15/17
**Sioux Falls [3]** 4/12
15/17 15/17
**sit [1]** 4/18
**sitting [2]** 8/20 8/22
**situations [1]** 14/20
**six [1]** 8/22
**Sixth [8]** 5/2 5/9 5/13
5/25 7/13 11/5 15/20
17/19
**slightly [2]** 4/8 9/16
**somebody [1]** 9/8
**something [2]** 9/9 15/21
**sounds [1]** 14/2
**SOUTH [4]** 1/2 1/6 21/1
21/9
**SOUTHERN [1]** 1/3
**specific [1]** 6/20
**specter [1]** 15/22
**speedy [1]** 10/17
**spent [2]** 8/13 8/20

**S**

**SS [1]**  21/1
**stand [1]**  7/10
**STATES [14]**  1/1 1/5 1/13 3/6 7/4 7/7 7/9 7/18 7/20 7/21 7/21 10/24 21/1 21/3
**States' [1]**  6/5
**stipulation [1]**  14/10
**stuff [1]**  8/15
**subject [2]**  9/23 10/2
**substance [1]**  7/2
**such [1]**  21/7
**suggestion [2]**  15/23 17/18
**support [1]**  6/20
**supposed [1]**  16/5
**Supreme [2]**  7/8 7/9
**sure [2]**  11/24 19/22
**system [2]**  3/2 21/5

**T**

**take [3]**  9/3 9/8 17/20
**Tamayo [3]**  8/2 8/13 14/23
**team [2]**  9/18 10/3
**technical [1]**  9/17
**technology [1]**  9/16
**Tennessee [1]**  7/19
**terms [1]**  19/19
**test [2]**  15/22 19/20
**testified [1]**  16/1
**testimony [2]**  6/8 21/8
**thank [1]**  11/10
**thereto [1]**  11/7
**third [1]**  16/11
**though [2]**  10/25 19/17
**threat [1]**  16/13
**threatened [1]**  14/17
**tie [1]**  19/18
**tip [1]**  5/22
**tipping [1]**  5/10
**tips [2]**  6/2 7/14
**today [6]**  4/8 4/13 4/18 5/18 6/1 10/20
**together [1]**  7/10
**too [2]**  4/18 11/22
**transcribed [2]**  3/1 21/4
**Transcriber [1]**  1/22
**transcript [6]**  1/11 2/6 6/7 6/12 11/19 21/4
**transfer [1]**  18/13
**travel [1]**  8/17
**trial [9]**  6/5 6/9 10/17 15/14 16/1 16/18 17/20 18/15 18/18
**tried [1]**  19/20
**trip [1]**  4/11
**trove [1]**  9/24
**try [1]**  16/21
**twice [1]**  15/10
**two [3]**  4/9 4/20 9/15
**type [1]**  14/13

**U**

**ultimately [2]**  5/9 5/22
**unconstitutional [1]**  5/25
**under [4]**  5/4 5/25 7/4 7/5
**understand [4]**  10/3 10/23 15/8 18/16
**understanding [1]**  9/17
**UNITED [15]**  1/1 1/5 1/13 3/5 6/5 7/4 7/7 7/9 7/18

7/19 7/21 7/21 10/24 20/5 21/3
**unless [1]**  11/9
**unsympathetic [1]**  14/8
**until [2]**  15/14 16/15
**use [1]**  18/15

**V**

**various [1]**  6/15
**Ventris [1]**  7/6
**verbal [1]**  6/24
**verify [1]**  6/11
**VERONICA [1]**  1/12
**versus [8]**  3/6 7/4 7/6 7/8 7/18 7/20 7/21 7/21
**violations [1]**  6/24
**violence [1]**  14/14
**voluminous [1]**  9/14
**vs [1]**  1/7

**W**

**warnings [1]**  6/24
**warrants [1]**  9/23
**weeks [4]**  4/9 4/20 9/15 9/21
**weigh [1]**  11/6
**weighing [1]**  5/10
**weighs [1]**  8/17
**weight [2]**  5/9 11/5
**witness [1]**  15/23
**witnesses [1]**  14/16
**working [1]**  10/3
**worth [1]**  19/23
**written [5]**  3/21 8/21 8/23 8/24 9/12

**Y**

**YANKTON [4]**  2/4 6/17 8/7 15/12
**year [1]**  16/3
**years [1]**  14/9
**York [1]**  7/18

**Z**

**Zoom [1]**  15/1